Ronald BEHAGEN, Plaintiff-Appellant,

v.

AMATEUR BASKETBALL ASSOCIA-
TION OF the UNITED STATES OF
AMERICA, and Federation Internatio-
nale De Basketball Amateur, and Wil-
liam Wall, Defendants-Appellees.

No. 83–1435.

United States Court of Appeals,
Tenth Circuit.

Sept. 20, 1984.

Steven M. Schneebaum of Patton, Boggs & Blow, Washington, D.C. (Ronald H. Brown of Patton, Boggs & Blow, Washington, D.C., and William A. Palmer of Gibson, Gerdes & Palmer, Colorado Springs, Colo., with him on brief), for plaintiff-appellant.

Glen E. Keller, Jr., Denver, Colo. (John M. Roche, Denver, Colo., with him on brief) of Davis, Graham & Stubbs, Denver, Colo., for defendant-appellee Federation Internationale de Basketball Amateur.

Before BARRETT, DOYLE and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

Ronald Behagen, a basketball player, brought this suit against the Federation Internationale de Basketball Amateur (FIBA), the Amateur Basketball Association of the United States of America (ABA/USA), and ABA/USA's executive director William Wall. FIBA is the international association governing amateur basketball in its member countries, and ABA/USA is the American member of FIBA. The district court dismissed for lack of personal jurisdiction. It entered judgment under Fed.R.Civ.P. 54(b) to permit Behagen to appeal immediately. For the reasons set out below, we reverse.

Behagen played professional basketball in the National Basketball Association (NBA) from 1973 through 1979. In October 1979, Behagen accepted an offer from a team in the Italian basketball league. Although the Italian team gave Behagen a salary, transportation, and living accommodations, the league is nonetheless considered an amateur one by FIBA. The Italian league required Behagen to be qualified as an amateur, which apparently entailed receiving and ABA/USA travel permit or a FIBA license or both.[1] Behagen was reinstated as an amateur by FIBA, obtained a FIBA license, and played with the Italian league during its 1979–1980 season.

In March 1980, Behagen returned to the United States and signed a "tryout" contract with the NBA Washington Bullets for the remaining two weeks of that team's season. He played in eight games with the Bullets but was not offered a contract for the coming season. In the summer of 1980, Behagen signed another contract with the Italian team. Behagen was subsequently informed by the team that his FIBA license had been revoked because he had played for the Bullets. FIBA purportedly has a rule prohibiting reinstatement to amateur status more than once. Without this document reflecting his amateur status, Behagen was no longer eligible to play in the Italian league.

Behagen then brought this suit against ABA/USA, FIBA, and Wall for damages, injunctive relief, and a declaratory judgment. In his complaint Behagen alleges that the decision to deny his second reinstatement to amateur status was made without giving him notice or a hearing, and was contrary to the regulations and practice of ABA/USA, FIBA, or both. Behagen asserts claims for breach of contract, denial of due process, tortious interference with contract, and antitrust violations.

FIBA filed a motion under Fed.R.Civ.P. 12(b)(2) to dismiss for lack of personal jurisdiction, contending that FIBA does not have sufficient minimum contacts with Colorado to support jurisdiction under the

---

1. The record reveals some confusion on this issue. An affidavit by the Associate Executive Director of ABA/USA states that Behagen had never requested or received an ABA/USA travel permit, and that reinstatement to amateur status was a decision solely within the jurisdiction of FIBA. Indeed, defendants ABA/USA and Wall moved at one point to dismiss the action under Fed.R.Civ.P. 19 because Behagen had as yet failed to serve FIBA. In his deposition, however, Wall stated that when FIBA issues a license, it can order ABA/USA to issue a retroactive travel permit and ABA/USA will do so. Wall further stated that ABA/USA recommends reinstatement pursuant to FIBA regulations and issues travel permits certifying amateur status, and that such a determination has never been reversed by FIBA. Wall also testified that it is ABA/USA's responsibility as a FIBA member to notify FIBA when an American player turns professional.

state's long-arm statute. Because both Behagen and FIBA offered affidavits and other written material on this issue, the district court treated the motion as one for summary judgment and granted it.

■ The plaintiff bears the burden of establishing personal jurisdiction over the defendant. *American Land Program, Inc. v. Bonaventura Uitgevers Maatschappij, N.V.*, 710 F.2d 1449, 1454 n. 2 (10th Cir.1983). Prior to trial, however, when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing. *Id.; Brown v. Flowers Industries, Inc.*, 688 F.2d 328, 332 (5th Cir.1982), *cert. denied*, 460 U.S. 1023, 103 S.Ct. 1275, 75 L.Ed.2d 496 (1983); *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir.1981); *Neiman v. Rudolf Wolff & Co.*, 619 F.2d 1189, 1190 (7th Cir.), *cert. denied*, 449 U.S. 920, 101 S.Ct. 319, 66 L.Ed.2d 148 (1980); *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. *American Land Program*, 710 F.2d at 1454. If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party. *Id.* at 1454 n. 2; *Marine Midland Bank*, 664 F.2d at 904; *Neiman*, 619 F.2d at 1190.

Behagen seeks to assert in personam jurisdiction over FIBA under Colorado's long-arm statute, which permits service of process outside Colorado upon any person subject to the jurisdiction of the courts of Colorado. Colo.Rev.Stat. §§ 13-1-124, -125 (1973). "In enacting the long-arm statute, the Colorado legislature intended to extend the jurisdiction of Colorado courts to the fullest extent permitted by the due process clause of the United States Constitution." *Waterval v. District Court*, 620 P.2d 5, 8 (Colo.1980), *cert. de-*

*nied*, 452 U.S. 960, 101 S.Ct. 3108, 69 L.Ed.2d 971 (1981).

FIBA argues that Colorado cannot exert personal jurisdiction over it because it is an association with headquarters, staff, and offices in Munich, Germany; it has no office or assets in Colorado or even the United States; it is not licensed to do business in the United States; and it has committed no acts in the United States, in general, and Colorado, in particular. FIBA points out that Behagen's claim that he was denied the right to play basketball in Italy is unrelated to Colorado. In response, Behagen contends that personal jurisdiction over FIBA is proper in Colorado regardless of where the cause of action arose because FIBA has maintained continuous and substantial activity there through its American constituent, ABA/USA; in other words, FIBA is "present" in Colorado through ABA/USA.

■ If, as in this case, "the cause of action does not arise out of or relate to the foreign [defendant's] activities in the forum State, due process is not offended by a State's subjecting the [defendant] to its *in personam* jurisdiction when there are sufficient contacts between the State and the foreign [defendant]." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, — U.S. —, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984) (footnote omitted). In *Hall*, the Supreme Court reaffirmed its decision in *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 438, 445, 72 S.Ct. 413, 414, 418, 96 L.Ed. 485 (1952), that when a foreign defendant carries on a continuous and systematic part of its general business in the forum state through its agents, that state's exercise of jurisdiction over an unrelated cause of action is reasonable and just.

The Colorado courts have applied *Perkins* in holding that when a defendant has substantial, continuous contacts with the forum state, " 'jurisdiction may be found even when the cause of action does not arise out of the forum related activity.' " *Waterval*, 620 P.2d at 9 (quoting *Tucker v. Vista Financial Corp.*, 192 Colo. 440, 443, 560 P.2d 453, 456 (1977)); *see also Le Man-*

*ufacture Francaise v. District Court,* 620 P.2d 1040, 1047 (Colo.1980) (en banc). Colorado consistently has distinguished between cases in which jurisdiction is sought based on a single isolated incident, and cases in which jurisdiction is predicated on allegations of continuous, substantial conduct in the forum state.[2] *See id.; see also Ruggieri v. General Well Service, Inc.,* 535 F.Supp. 525, 529 (D.Colo.1982) (defendant is subject to personal jurisdiction of Colorado court if he is "present" in state).

In support of its position that FIBA is "present" in Colorado through ABA/USA, Behagen made the following showing to the trial court. FIBA is the international association regulating amateur basketball in some 150 countries. Its members are the national bodies governing amateur basketball in each of its member nations. FIBA regulations are initiated in committees made up of various members, and ratified by the full body. ABA/USA, headquartered in Colorado, is the American organization governing amateur basketball in the United States, and the American member of FIBA. According to the 1981–82 ABA/USA Handbook, "[a]s the United States franchise holder to [FIBA], ABA/USA must adhere to the regulations and policies set forth by FIBA." Rec., vol. I, at 79. Significantly, the Handbook states that ABA/USA "*shall carry out the responsibilities of F.I.B.A.*" with respect to sanctioning FIBA competitions and determining player eligibility. *Id.* at 78 (emphasis added). The Handbook further provides that ABA/USA may sponsor both United States and foreign teams in competitions among FIBA member countries, and must ensure that only FIBA officials are used in these competitions. Pursuant to FIBA regulations, ABA/USA issues international travel permits certifying a player's amateur status and decides applications for reinstatement to amateur status. Defendant Wall stated in his deposition that if ABA/USA were not the FIBA member in the United States it would go out of business, *id.* at 51, and that "[e]verything that happens every place in the world in amateur basketball falls under the FIBA jurisdiction in every country." *Id.* at 69.

■ The above evidence constitutes a prima facie showing that FIBA maintains continuous and substantial activity in Colorado through the actions taken on its behalf by its constituent, ABA/USA. Viewed most favorably to Behagen, the record reflects that FIBA *is* its members, and that it governs internationally related amateur basketball through its member organization in each country.

Despite the district court's finding that "ABA/USA functions for FIBA in the United States," rec., vol. I, at 106, it concluded that the record contains an insufficient factual basis for finding that FIBA and ABA/USA are either the same entity or principal and agent. Under Colorado law, however, the issue of agency is a fact question. *See, e.g., Dailey v. Elicker,* 447 F.Supp. 436, 439 (D.Colo.1978); *Shriver v. Carter,* 651 P.2d 436, 439 (Colo.Ct.App. 1982). On this record, there clearly are fact questions regarding the relationship between FIBA and ABA/USA that cannot be determined summarily.

■ The district court also concluded that FIBA's contacts with Colorado through ABA/USA were insignificant. It based its conclusion in part on the fact that the concurrent activity of FIBA and ABA/USA was not a joint "commercial" endeavor. However, the due process clause does not require that a foreign defendant's contacts with the forum state be commercial in nature. *See Nova Biomedi-*

---

**2.** Although FIBA urges us to apply the three-pronged test set out in *Van Schaack & Co. v. District Court,* 189 Colo. 145, 538 P.2d 425, 426 (1975) (en banc), that test is applicable only when "jurisdiction is based on a single act of the defendant." *Tucker,* 560 P.2d at 455–56. The Colorado courts clearly have recognized that the three-pronged test is not mandated by federal due process when the defendant's conduct in the forum is continuous and substantial. *See id.* at 456; *Le Manufacture Francaise,* 620 P.2d at 1047; *Waterval,* 620 P.2d at 9 & n. 3. Thus the *Van Schaack* test is not the proper analytical framework for evaluating in personam jurisdiction in this case.

*cal Corp. v. Moller,* 629 F.2d 190, 193 (1st Cir.1980) (state long-arm statute extending jurisdiction to federal constitutional limits not limited to commercial activity by defendant); *McLean v. Church of Scientology,* 538 F.Supp. 545, 549–50 (M.D.Fla.1982) (commercial transaction for pecuniary benefit not required under liberally construed long-arm statute). Even though FIBA and ABA/USA are not involved in a commercial endeavor, FIBA may still conduct significant activity in Colorado through ABA/USA for purposes of long-arm jurisdiction.

Behagen has presented facts tending to show that FIBA consists of its members, that FIBA operates through committees made up of members, that the members promulgate the governing rules as a congress, and that FIBA governs internationally related basketball in each country through its member organization there. We conclude that it would not offend due process to require FIBA to defend a lawsuit wherever members conduct FIBA activities if FIBA in fact consists of its members and acts only through them. The undeveloped record in this case reveals that there exist factual disputes material· to these issues. Therefore summary judgment was inappropriate. *See* Fed.R.Civ.P. 56(c); *Houghton v. Foremost Financial Services Corp.,* 724 F.2d 112, 114 (10th Cir.1983).

We reverse the district court's order dismissing this action against FIBA. The case is remanded for further proceedings.

BARRETT, Circuit Judge, dissenting.

I have concluded that the district court's dismissal of FIBA for want of *in personam* jurisdiction was proper. In my view, the district court correctly analyzed the structure of FIBA and ABA/USA from the pleadings and concluded correctly that: when FIBA denied Behagen a license to play in Italy, it was acting against him as an Italian, not an American, basketball player; FIBA's action had nothing to do with Behagen's standing as an amateur in America and any impact felt by Behagen was in Italy, not in the United States, for the "right" advanced here by Behagen was that of playing basketball in Italy; giving credence to Behagen's theory could only result in the creation of a right to sue in Italy; Behagen postulates simply that because FIBA performed an act in Germany (revocation of his license) which Behagen *felt* in the United States, FIBA is answerable to the jurisdiction of an American court—a postulation which, if applied, would lead to mischief neither contemplated nor countenanced by law.